## WILSON *v.* STATE

[No. 156, October Term, 1951.]

*Decided May 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*D. K. McLaughlin,* with whom was *Francis H. Urner* on the brief, for the appellant.

*J. Edgar Harvey, Deputy Attorney General,* with whom were *Hall Hammond, Attorney General,* and *John S. Hollyday, State's Attorney for Washington County,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment and sentence on conviction of bookmaking. Defendant was arrested on a warrant charging bookmaking on October 19, 1951. Before the magistrate the State's Attorney prayed a jury trial. Code, Art. 52, sec. 13A. The case was tried in the circuit court without a jury, and defendant was found guilty.

Two questions are presented, (1) whether a search warrant should have been quashed because in it (*a*) the offense charged was erroneously referred to "as defined in Chapter 81 of the Acts * * * of 1950" and (*b*) defendant, "the individual to be searched", was described (inaccurately he says) and not named, though his name was known to the applicant for the warrant, and (2) whether (*a*) defendant's motion for a directed verdict should have been granted and (*b*) evidence of bookmaking on October 12, 1951 should have been excluded.

The same point as to the erroneous reference to Chapter 81 of the Acts of 1950 was made in *Carpenter v. State,* 200 Md. 31, 88 A. 2d 180, and in *Saum v. State,* 200 Md. 85, 88 A. 2d 562, just decided. For the reasons stated in those cases this erroneous reference does not invalidate the search warrant.

The search warrant was dated October 18, 1951. In it defendant was referred to as "a white man * * * described as being about five feet, nine inches in height, about 180 pounds in weight and about forty years of age, * * * whom affiant [Officer Diggins] had previously heard called Whitey, * * * who will be identified by the affiant". The warrant commanded the applicant, "with the necessary and proper assistance, to arrest and search" defendant. The arrest and search were made by Officer Smith on October 19, 1951. At the trial

Diggins and Detective Wigfield testified that before October 19th Diggins pointed out defendant, whom Diggins had heard called Whitey and Skinny, and Wigfield said it was Skinny Wilson. Diggins said this was after the affidavit had been prepared but before it had been signed and presented to Judge Mish. In view of the serious consequences of errors in names in the old technicalities of criminal procedure (*West v. Cabell*, 153 U. S. 78, 85, 14 S. Ct. 752, 38 L. Ed. 643), it may be questioned whether when the search warrant was issued Diggins knew defendant's correct name. However, for present purposes we shall assume that he did know it.

Article 26 of the Declaration of Rights declares that "all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal". Art. 27, sec. 306, of the Code provides that a search warrant "shall name or describe, with reasonable particularity, the individual, building, apartment, premise, place or thing to be searched". In effect, defendant contends that in sec. 306 "name or describe" should be construed to mean "name, if the name is known, or, if the name is not known, describe". For this contention defendant cites no decision of this court so construing either the Declaration of Rights or the statute, and only a *dictum* in *United States v. Borkowski*, 268 Fed. 408, a district court opinion by a district judge. Another district court opinion contains a statement to the same effect. *United States v. Kaplan*, 286 Fed. 963.

The volume of Maryland and federal legislation relating to search warrants is in striking contrast. Federal statutes are legion, beginning with an act of July 31, 1789. See list in appendix to dissenting opinion of Mr. Justice Frankfurter in *Davis v. United States*, 328 U. S. 582, 616-623, 66 S. Ct. 1256, 90 L. Ed. 1453. In Maryland there seems to have been no statute at all before 1939—unless the Bouse Act of 1929 be considered such a statute. The Act of 1939, ch. 749 (Art. 27, secs.

306-307) is in force, as amended by the Act of 1950, ch. 81. Compared with federal legislation, the Bouse Act and the Act of 1939 show important similarities and also material differences. "The Bouse Act and the Act of 1939 amount to adoption *pro tanto* of Supreme Court decisions under the Fourth Amendment". *Wood v. State,* 185 Md. 280, 285, 44 A. 2d 859, 861. That is to say, the federal decisions have been adopted with respect to prosecution for misdemeanors, but with respect to felonies the former Maryland law remains unchanged. Unlike the Bouse Act, the Act of 1939 was enacted, not to provide additional safeguards for persons accused of crime, but apparently primarily to overcome the effect of the decision, in *Sugarman v. State,* 173 Md. 52, 195 A. 324, (decided October 29, 1937), that at common law search of an automobile under a search warrant was not authorized.

Rule 4(b) (1) of the Federal Rules of Criminal Procedure provides that a warrant for arrest upon complaint "shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be identified with reasonable certainty". 327 U. S. 834. This provision may have originated in some federal statute, and is not without precedent in state statutes (elsewhere than in Maryland). *Restatement, Torts,* § 125, comment *c; West v. Cabell,* 153 U. S. 78, 87, 14 S. Ct. 752, 38 L. Ed. 643. Rule 9 (b) (1) makes this provision applicable to warrants for arrest upon indictment. Rule 41 (c) provides for a search warrant "naming or describing the person or place to be searched". We have found no decision of the Supreme Court or any of the United States Courts of Appeals which decides whether or not these words in Rule 41 (c) or in antecedent statutes are equivalent to those quoted from Rule 4 (b) (1).

Whatever there may or may not be in the long history of federal legislation to justify a restrictive construction of Rule 41, we see nothing to justify us in reading restrictive words into the Act of 1939. We are confirmed

in this view by the circumstance that Rule 41 (e) expressly provides that, on motion for return of property and to suppress evidence, "The judge shall receive evidence on any issue of fact necessary to the decision of the motion", whereas we have held that "the court's consideration of the showing of probable cause should be confined solely to the affidavit itself, and the truth of the alleged grounds stated in the affidavit cannot be controverted * * * by receiving the testimony of the accused and other witnesses." *Smith v. State,* 191 Md. 329, 335, 62 A. 2d 278, 289, 5 A. L. R. 2d 386; *Goss v. State,* 198 Md. 350, 84 A. 2d 57. It might not be necessarily illogical, but it would be incongruous to hold that the court cannot hear evidence as to probable cause, but must hear evidence as to whether or not the applicant knew defendant's correct name—or how accurate the description of him by height, weight and age was.

Recently we held invalid a search warrant which recited an application by "Sergeant S. Ralph Warnken" because the Act of 1939 requires that a search warrant shall state "the name of the applicant on whose written application as aforesaid the warrant was issued". *Howard v. State,* 199 Md. 529, 531, 87 A. 2d 161, 162. More recently we held that general words in a search warrant, broad enough to include persons on the premises as to whom no probable cause is shown (*DeAngelo v. State,* 199 Md. 48, 85 A. 2d 468), does not invalidate the warrant *in toto,* because the statute does not so provide and the invalid general words are separable from the valid provisions which alone affected the appellant. *Saunders v. State,* 199 Md. 568, 87 A. 2d 618. Also recently we have refused to hold search warrants invalid for a variety of reasons not covered by any provision in the Act of 1939, *e.g.,* manner of service of the warrant, *Carpenter v. State,* 200 Md. 31, 88 A. 2d 180; *Adams v. State,* 200 Md. 133, 88 A. 2d 556; failure to date the search warrant, *Bell v. State,* 200 Md. 223, 88 A. 2d 567; erroneous reference to the Act of 1950, ch. 81,

*Carpenter v. State, supra; Saum v. State,* 200 Md. 85, 88 A. 2d 562.

The Act of 1939 evidently was carefully drawn, a few years after the end of an extensive national education on the subject of search warrants. We do not mean to say that there are no possible requirements of search warrants which are implied, but not expressed in the Act of 1939. If, however, the torrent of objections to search warrants for lack of probable cause, which has been flowing in this court for some years, now seems to be running out, we are not disposed to be astute to find new implied requirements of search warrants.

Defendant objects to admission of evidence of bookmaking on October 12, 1951, because the warrant charges only bookmaking on October 19, 1951. Evidence is not restricted to the exact date named in an indictment—or warrant—but may show the offense charged at any time within one year prior to the date named. *Curry v. State,* 117 Md. 587, 589, 83 A. 1030. Defendant would distinguish the *Curry* case, or limit its application, because (it is said, but not shown in the record) that before the trial defendant had been indicted for bookmaking on October 12, 1951, and by conviction in the instant case for that offense might be subjected to double jeopardy. The distinction is not pertinent. Double jeopardy depends upon facts, not future possibilities. The question is the same whether the second prosecution is begun before or after trial of the first charge. Under a plea of *autrefois convict* or *autrefois acquis,* the principles of *res judicata* are applicable in the same way as in a civil case. It must be shown from the record in the first case that the offense tried was the same as that charged in the second case. In the instant case the opinion of this court will sufficiently identify the charge to prevent a second conviction for bookmaking on October 12, 1951.

The testimony as to bookmaking on October 12, 1951 was therefore admissible in evidence. It was also legally sufficient to convict and therefore to require denial of

defendant's motion for a directed verdict. Officer Diggins testified, "About 12:25 p.m. October 12th I was parked in front of the Eagles at 49 South Potomac Street, Mr. Wilson came out, stood in front about two feet from my car, three or four minutes passed, I saw a man who delivers Armstrong Scratch Sheets to the Hagerstown News Agency now known as John Miller give Mr. Wilson an Armstrong Scratch Sheet, Mr. Wilson gave him a coin, I do not know the amount, Mr. Wilson opened the scratch sheet, glanced at it, a white man walked up to him, Mr. Wilson handed the sheet to the man, the man looked at it, gave him a ten dollar bill and said put me five and five on Caraway the second race at Laurel. Mr. Wilson accepted the bill, took a piece of paper from his pocket, made a notation on it and put it in his right trouser pocket." This was direct evidence of the offense of bookmaking committed in Diggins' presence.

*Judgment affirmed, with costs.*