# GREENWALD *v.* STATE

[No. 43, September Term, 1959.]

246

*Decided January 12, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*H. Albert Young* and *Bruce M. Stargatt,* with whom were *Morford, Young & Conaway, Floyd J. Kintner, William B. Evans* and *Zebulon H. Stafford* on the brief, for appellants.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Albert Roney, Jr., State's Attorney for Cecil County,* and *Henry P. Turner, State's Attorney for Talbot County,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

In this case the jury found the appellant Greenwald, a physician of Elkton, guilty of conspiring with Ott, a taxi driver, to violate the marriage laws of Maryland by issuing a false certificate of pregnancy to a female minor so as to permit her to marry without parental consent. Error is claimed in the admission of testimony as to the acts and declarations of the taxi driver in relation to four occurrences, similar, but prior in time, to that alleged in the indictment as evidencing the conspiracy.

The indictment charged that on February 6, 1958, the taxi driver and the physician conspired and agreed, each with the other, to violate the marriage laws by knowingly and unlawfully causing to be issued and issuing a certificate of pregnancy to Jacqueline Oster, a female minor who was not pregnant, so as to aid her and her future husband, Donald McFarland, to obtain a marriage license in Cecil County. The

appellant was convicted at another trial of the substantive offense of perjury, for the signing and giving out of the false certificate of pregnancy on February 6, 1958, and his conviction was affirmed in *Greenwald v. State*, 221 Md. 235.

The record does not disclose it but we are told in the briefs and at argument that on July 14, 1958, the date of the indictment in the case before us, the Grand Jury of Cecil County found eighty-five indictments against Greenwald, forty-two charging perjury and forty-three charging conspiracy on the days of the commission of the overt acts alleged in the perjury indictments.

The testimony below was that on February 6, 1958, Donald McFarland and Edward Rutledge came from Baltimore to Elkton to apply for marriage licenses. Ott, the taxi driver, told them that if the clerk of the court asked whether they had their parents' consent they should answer that their girls were pregnant. This they did and were advised by the clerk that in that case the law required a doctor's certificate of pregnancy. They returned to the taxi, and Ott said: "This will cost you $15." They paid him. Ott went into Dr. Greenwald's office before the boys. When they entered, the doctor said: "I understand your girls are pregnant," asked the names of the girls and how far advanced were the pregnancies and, when he was told, filled out and signed certificates to the effect that he had examined the girls and found them to be three and one-half months pregnant. Jacqueline Oster was not, in fact, pregnant. The doctor did not ask for, and was not paid, any fee. Ott solicited and was paid an additional five dollars after the boys left the office.

On February 10, four days later, McFarland and Miss Oster were issued a license and were married.

It was shown that in 1957 on May 8, July 20, August 31, and November 19, similar certificates were issued by Dr. Greenwald to applicants brought to him by Ott. All of the eight individuals testified as to what occurred and what Ott told them to do, including his ascertainment that the couple were unable to get a license without a certificate, his request for a fee and its payment to him, and the ultimate issuance of the doctor's certificate and the marriage license. In three

of the instances he advised telling the doctor the girl was several months pregnant, took the couple, or one of them, to the doctor and went in the office alone ahead of his clients. In the fourth instance neither of the applicants even saw the doctor; Ott got the certificate and brought it to them.

Appellant says both the prior acts and the declarations of Ott improperly were admitted in evidence to his prejudice. His grounds of objection as to the acts differ from those as to the declarations. He acknowledges that to aid in proof of the crime charged the State generally may prove prior acts, even though they constitute a crime, that tend to show motive, intent, a common scheme or design, absence of mistake or accident, or identity, if such a showing has relevance in establishing a principal fact at issue or matter in dispute. *Ward v. State,* 219 Md. 559; *King v. State,* 190 Md. 361. He concedes that this general rule is applicable in cases of conspiracy. *Bloomer v. State,* 48 Md. 521; *State v. Barnes* (Conn.), 44 A. 2d 708, 709.

His argument on the point is that the details of the prior acts differ from those of the occurrence of February 6 to a degree that keeps them from having common features sufficient to make them properly probative of a common plan or design, citing 2 Wigmore, *Evidence,* Sec. 304, (3rd Ed.) (He refers to the fact that in two of the earlier instances both boy and girl were seen by the doctor, whereas only the boy was on February 6; in another, neither boy nor girl saw the doctor; in one case the doctor, after asking the girl to stand, felt her abdomen and asked her menstrual history.)

The appellant's contention as to the declarations of Ott during the four earlier occurrences is that they were hearsay and inadmissible against Greenwald because the two defendants were charged in the indictment as having conspired only on February 6, 1958, and (as the law undoubtedly is) the declarations of one conspirator generally are admissible against another only on the theory of agency, which can exist only during the period of the conspiracy, and not before it begins or after it ends.

We think the contentions of appellant are not sound. The prior acts all were shown to have great similarity, if not

identity, with those of February 6 on all significant points: the solicitation by Ott, the advice as to claiming pregnancy, the receiving of the fee, Ott's instructions and arrangements, the failure of the doctor to examine the girl at all, or his examining her so cursorily as to amount to no examination at all, the issuance of the pregnancy certificates, and the absence of collection of a fee by the doctor himself. This course of conduct established not only a similarity of result but also (in the words of Wigmore in the section relied on by the appellant): "Such a concurrence of common features" that the various acts "are naturally to be explained as caused by a general plan of which they are the individual manifestations." The prior acts properly were allowed in evidence on the theory of general plan.

Not only were the prior acts admissible as showing a common scheme and design but also as acts occurring during a continuing conspiracy. In conspiracy there may be a design and plan common to a series of separate conspiracies, as in *United States v. Johnson,* 165 F. 2d 42; *State v. Barnes* and *Bloomer v. State,* both *supra; State v. Glidden* (Conn.), 8 A. 890; *King v. State* (Miss.), 86 So. 339; or a common scheme and design which is but one continuing conspiracy evidenced by a series of overt acts done in furtherance of it. In Maryland, as generally, the gist of a conspiracy is the entering into of the illegal scheme or design, and once this occurs, the crime is complete without the doing of an overt act (the means of accomplishing the conspiracy need not be alleged in the indictment, *Hurwitz v. State,* 200 Md. 578). In proving the conspiracy it is not necessary to demonstrate that the defendants came together and actually agreed in terms to a design and to pursue it by common means. If it be proved that the defendants sought the same objective and that one performed one function and the other another in the attainment of that objective, the inference that they were engaged in a conspiracy will be justified. If the conspiracy contemplated as its purpose the commission of one offense, the continuance of the result of the commission of that offense would not necessarily continue the conspiracy, but if the conspiracy contemplated the continuous cooperation

of the conspirators in the perpetration of a series of offenses against the sovereign within its scope and purpose, it was in effect "a partnership in criminal purposes," and continued until the time of its abandonment or the final accomplishment of its purposes. *Remus v. United States* (6th Cir.), 291 F. 501, 504-505.

The record shows that Ott and Greenwald, beginning at least as early as May 8, 1957, conspired to violate the marriage laws of Maryland by bringing about the delivery of marriage licenses issued on the strength of false certificates of pregnancy of female minors. The common plan here is not to be distinguished from that found to constitute a single continuing conspiracy in *United States v. Kissel,* 218 U. S. 601, 54 L. Ed. 1168 (to eliminate free competition in the sugar industry) ; *United States v. Manton* (2nd Cir.), 107 F. 2d 834 (to obstruct justice and defraud the United States by obtaining gratuities from parties to law suits in order to insure them a favorable finding by the judge) ; *Blumenthal v. United States,* 332 U. S. 539, 557-558, 92 L. Ed. 154, 168-169 (salesmen who made illegal sales above a ceiling price of a particular brand of whisky obtained from the same wholesaler had a single purpose to raise illegally the price of that whisky) ; *United States v. Rosenberg,* (2nd Cir.), 195 F. 2d 583, *cert. den.,* 344 U. S. 838, 97 L. Ed. 652, *reh. denied,* 344 U. S. 889, 97 L. Ed. 687 (Sobell, a co-conspirator of the Rosenbergs, contended unsuccessfully that two espionage conspiracies, one involving ordinary military secrets and the other involving atomic secrets, with the latter of which they claim Sobell had no connection, were separate and distinct conspiracies).

In *Archer v. State,* 145 Md. 128, 145 *et seq.,* two conspiracies (to obtain money by false pretenses made to customers and others who might be induced by the false pretenses to become customers, with the intention to cheat and defraud the customers and others) were alleged, one beginning August 11, 1917, and continuing to December 19, 1921, and the other beginning January 1, 1921, and continuing to December 19, 1921. The court held the statute of limitations to be one year from the date of the presentment but said

also (1) that the contention that the crime charged was complete on the day the traversers were alleged to have first conspired was not valid; (2) that the conspiracy was a continuing one, so that the bar of the statute of limitations was avoided if a conspiracy was shown by an overt act within the period of limitations, and (3) that the proof as to this aspect could be aided by proof that the conspiracy began before the period of limitations. The court quoted the language of Mr. Justice Holmes in *United States v. Kissel,* cited above: " 'But when the plot contemplates bringing to pass a continuous result that will not continue without the continuous coöperation of the conspirators to keep it up, and there is such continuous coöperation, it is a perversion of natural thought and of natural language to call such continuous coöperation a cinematographic series of distinct conspiracies, rather than to call it a single one,' " and found the Maryland cases to support the rule of the quoted language.

The fact that the indictment before us laid the conspiracy on February 6 is not controlling if the proof showed that the conspiracy was a continuing one that began before February 6. In criminal cases generally the state is not limited to the date set out in the indictment but may show that the crime charged occurred at any date within the period of limitations. *Novak v. State,* 214 Md. 472, 477; *Wilson v. State,* 200 Md. 187, 193. The rule generally applicable is applicable in trials for conspiracy. See *People v. Raymond* (Ill.), 130 N. E. 329. There the indictment charged that the conspiracy was entered into on May 18, 1918, and proof that it began before May 18 was offered. The court held it could be shown that the conspiracy had been formed at any time within eighteen months before the indictment was returned. *Goldberg v. United States* (5th Cir.), 297 F. 98, 101, was a case in which the indictment alleged conspiracy on August 26, 1922, and it was held that there was no error in proving it began three months earlier. In *Schefano v. United States* (5th Cir.), 84 F. 2d 513, the indictment charged that on January 1 and continuing thereafter for twenty-one months, the defendants conspired to violate an act which did not become effective until January 11. The court held that the date of January

1 was surplusage and that the indictment was proper. *Ochs v. People* (Ill.), 16 N. E. 662, is to the same effect. There the indictment alleged that the conspiracy began on November 1, 1885, and the proof was that it was formed in 1883. The holding was that since the period of limitations was eighteen months and the indictment had been found on April 2, 1887, the bar of the statute of limitations would apply to all acts committed prior to October 3, 1885. In affirming conviction, the court said (p. 673): "The evidence shows satisfactorily that Ochs and Wasserman were members of the conspiracy previous to October 3, 1885, and that they adhered to it afterwards during the whole interval of time to December, 1885, by their co-operation * * * with their fellow conspirators * * *."

*Commonwealth v. Bartilson,* 85 Pa. 482, dealt with a two-count indictment. The first count charged a conspiracy on December 20, 1874, and specified various overt acts committed pursuant to it. The court held this count to be barred by the statute of limitations. The second count laid the conspiracy as having been entered into on May 21, 1877. A bill of particulars to the second count, furnished on demand, charged the overt acts named in the first count and added one within the period of the statute of limitations applicable to the second count. The court said: (p. 489) "The fact that a conspiracy existed on the 21st day of May 1877, or upon any other day within two years of the exhibiting of the bill of indictment, may be shown by the previous acts, conduct or declarations of the parties. * * * Acts and declarations of the parties prior to the statutory period may be given in evidence, provided they tend to show a conspiracy existing at the time charged in the indictment. It is true they would not be admissible for the purpose of proving a distinct crime barred by the statute. But where in conspiracy an overt act is done within two years, and said act is but one of a series of acts committed by the parties, evidently in pursuance of a common design and to carry out a common purpose, such acts would be evidence, provided they tend to show that the last act was a part of the series and the result of an unlawful

combination; and such evidence may satisfy a jury of the existence of a conspiracy at the later period."

It was for the reason just stated that the court in *People v. Mather* (N. Y.), 4 Wendall 229, 259, 21 Amer. Dec. 122, 147 (a case where the indictment charged the conspiracy on a stated date), held that "If conspirators enter into the illegal agreement in one county, the crime is perpetrated there, and they may be immediately prosecuted; * * *. If they go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county without any evidence of an express renewal of their agreement. The law considers that wherever they act, there they renew, or, perhaps, to speak more properly, they continue their agreement, and this agreement is renewed or continued as to all whenever any of them does an act in furtherance of their common design."

In *Imboden v. People* (Col.), 90 P. 608, 621, the indictment charged conspiracy on September 10, 1904. The court told the jury they could find that the conspiracy began at any time within three years before the finding of the indictment. The accused alleged that this was error because it extended the time beyond the date alleged in the indictment. The answer of the appellate court was that the time need not be accurately stated in the indictment, because in conspiracy, time is not of the essence, and added: "While the indictment may charge the offense as having been committed upon a specified date, the proof may show that it was committed at any time previous to such a date and within the period of the statute of limitations. * * *"

It has been held that even though the indictment charges a substantive crime on a specified date but the proof shows that there was, in fact, a conspiracy to commit the substantive crime, the acts and declarations of one conspirator are admissible against the other, and the rules of evidence are the same as where conspiracy is expressly charged. 22 C. J. S. *Criminal Law*, Sec. 756b. The court so held in *People v. Novotny* (Ill.), 20 N. E. 2d 34, 35. There the indictment charged Novotny with maliciously damaging a building on September 8, 1937. The court said: "When, however, the

crime charged has been committed in pursuance of a conspiracy, even though the indictment does not charge conspiracy, it is competent to show that the crime committed was the result of a conspiracy and every act of the conspirators is admissible, even though the commission of other crimes is disclosed." See also *Commonwealth v. Hancock* (Super. Ct. Pa.), 112 A. 2d 407, 410, where the charge was of a substantive crime and the court held that since the defendants had been shown to have had a common intent, plan and design, the declarations of Miller, one conspirator, were admissible against the appellee Hancock. The opinion relied on *Commonwealth v. Sheaffer* (Super. Ct. Pa.), 23 A. 2d 215, 217, in which various authorities to the same effect are set forth at some length. See also *Coplin v. United States* (9th Cir.), 88 F. 2d 652, *cert. den.,* 301 U. S. 703, 81 L. Ed. 1357; *State v. Tennyson* (Minn.), 2 N. W. 2d 833, 837.

This Court has indicated agreement with the other Courts to which we have referred. In *Freud v. State,* 129 Md. 636, Freud was indicted with two others for the crime of conspiracy, alleged to have been committed on a date named in the indictment, to burn a storehouse with the intent to injure and defraud an insurance company. The record in the case shows the court held admissible against Freud the declaration of a co-conspirator "made during the progress and furtherance of the object of the conspiracy," and also held that evidence of declarations which had been made to a third person concerning an earlier fire at another location and as to other fires which were intended to be brought about, were admissible against the one who made them "to show intent, purpose, capacity and motive," adding that "* * * apart from these reasons, we think it was admissible as other similar prior acts of the traversers."

In *Lawrence v. State,* 103 Md. 17, the indictment charged conspiracy on July 18, 1904, to obtain property under false pretenses. The court reversed the judgment, partly because the trial court had admitted in evidence the statement of a co-conspirator after the conspiracy had been consummated, but the clear and necessary implication of the case is that acts and declarations of one conspirator made during the

period of the conspiracy, although several years before the date alleged in the indictment, were admissible against the other conspirators. *Wolf v. State,* 143 Md. 489, is another case in which the indictment charged conspiracy on a date named. This court approved the admission of evidence of intent to form the conspiracy before the date named. *Klecka v. State,* 149 Md. 128, agrees with *Freud* and *Lawrence* in permitting evidence of conspiracy before the date alleged in the indictment.

We come then to the question of the admissibility against Greenwald of the declarations of Ott. It may well be that the declarations were not hearsay, although the appellant claims they were. McCormick, *Evidence,* Sec. 225, defines hearsay as "testimony * * * of a statement made out of court, * * * to show the truth of the matters asserted therein." Strahorn, in *A Reconsideration of the Hearsay Rule and Admissions,* 85 U. Pa. L. Rev. 484, 486, puts it in this wise: "The rule excluding hearsay forbids the use of extra-judicial statements for the purpose of proving the truth of their content," while Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv. L. Rev. 177, 179, says that hearsay is "an utterance offered for a purpose which requires [the trier of fact] to treat the utterer as a witness * * *."

The statements of Ott were in the nature of instructions rather than statements of fact which the State sought to prove as such. These instructions were acted upon by the witnesses and certain events evolved from the following of the instructions. The declarations, in essence, would seem to have been verbal acts rather than statements of purported fact. If, however, it be assumed that the so-called declarations were hearsay and admissible only if made in the course of the conspiracy, the result is the same.

When the appellant moved to strike against him all testimony as to declarations made by Ott, the trial court said: "The motion is overruled on the basis that the Court rules that the State has established a *prima facie* case of conspiracy during the period when any of these statements were alleged to have been made and, therefore, believes that the statements

of Mr. Ott as a co-conspirator are evidence against the other conspirator Dr. Greenwald." The ruling was correct.

Since the evidence showed that the conspiracy existed at least as early as the occasion of the first declaration and continued to the date alleged in the indictment, the declarations, like the acts, were admissible as representative admissions as in the case of partnership or agency. *Lutwak v. United States,* 344 U. S. 604, 97 L. Ed. 593; McCormick, *Evidence,* Sec. 244; 4 Wigmore, *Evidence,* Sec. 1079 (3rd Ed.); *Freud v. State, supra.* Indeed, the appellant does not dispute that the declarations of one conspirator, made during the period of the conspiracy, are admissible against another. Nor need the conspiracy have been established before the declarations are admissible. Flexibility in the order of proof is allowed. *Bloomer v. State, supra; Piracci v. State,* 207 Md. 499, 521. In *United States v. Compagna* (2nd Cir.), 146 F. 2d 524, 530, the evidence was that all of the accused, who were members and officers of a labor union, and a number of others were engaged in a conspiracy to prey upon the fears of movie producers and exhibitors and extort money from them whenever there was a likely opening. The court said in ruling upon the admission of a declaration of one conspirator against another: "In 1934 when some members of the group were discussing the election of Browne as president, as we have just said, Buchalter told them that Zwillman would see to it that Kaufman would turn the vote of the New Jersey local. This may have been inadmissible when Bioff testified to it, but we have never held, and we do not think, that the order of proof is important. As soon as it appeared from the testimony we have just set out, that Kaufman later became connected with the conspiracy, all evidence became competent against him, of whatever had been theretofore done in its execution." See also *United States v. Postma* (2nd Cir.), 242 F. 2d 488, 496.

In the admission of the testimony complained of, we may note that the state, having convicted Greenwald of a conspiracy which, the testimony showed, began more than a year before the date of the presentment and was in existence on the date alleged in the indictment, cannot hereafter prosecute

him for that same conspiracy. *Wilson v. State,* 200 Md. 187, *supra.*

The appellant has shown no error in the rulings complained of and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*