SWANN, Judge.
The trial court entered an order quashing a form search warrant and suppressing evidence of a lottery. The state has taken this appeal.
The pertinent portions of the search warrant are:

“These presents * * * are to command you * * * to search said building painted green and white, this being 2050 N.W. 68 Terrace, Dade County, Florida, and the person or all persons therein who shall be connected with, or suspected of being connected with the operating or maintaining of said gaming or gambling games, devices, equipment, paraphernalia. * * * ” (Emphasis added.)
‡ J{i % ‡
In quashing the search warrant, the trial court held that the description failed to describe the persons to be searched with sufficient particularity and was, therefore, a general warrant. In addition the court held that by allowing a search to be made on suspicion, the warrant vested unlimited discretion in police officers executing the warrant and consequently violated both the *20 letter and spirit of Fla.Stat., § 933.05, F.S.A. The trial court went on to hold that a search warrant which is void in part, is void in toto and the void portions cannot be severed or treated as surplusage.
The record on -appeal does not indicate whether the suppressed evidence was seized as a result of the search of the premises or the search of a person or persons inside the premises.
As to the search of the premises, no argument is made that the search warrant was not issued upon an affidavit showing probable cause. See Fla.Stat., §§ 933.04 and 933.05, F.S.A. The premises were described with sufficient particularity-in both the affidavit and the search warrant. Church v. State, 151 Fla. 24, 9 So.2d 164 (1942). We hold, therefore, that the search of the premises was proper.
With regard to the persons involved, the affidavit stated that a lottery ticket had been purchased inside the premises from an unknown Negro female. Ordinarily, in Florida, the name of the person or persons to be searched should be stated, but if the name(s) are not known it is not fatal to the validity of the search warrant. Harvey v. Drake, Fla.1949, 40 So.2d 214; Church v. State, supra; Brown v. State, Fla.App.1966, 184 So.2d 691, 79 C.J.S. Searches and Seizures §§ 75 d and 81 b(3).
Appellee relies primarily on Crossland v. State, 266 P.2d 649 (Okl.Cr.App.1954) for affirmance. In Crossland, the court said:

“It is contended that the command to search ‘each and every person’ without naming the persons or describing them constituted a general warrant. At the hearing on the motion to suppress, the Sheriff testified that pursuant to the warrant, he searched the Ox Yoke Cafe and at the time of the search there were 25 or 30 patrons of the cafe sitting at tables eating and there were 10 or 12 employees of the defendant in the cafe. Altogether, there were 35 or more persons in the cafe who were subject to search under the terms of the warrant. Not one individual to be searched was described in the affidavit for the search warrant nor in the search warrant, either by name or other descriptive averment.” (Emphasis added.)
The Oklahoma Court said that this was a case of first impression and stated:
“It has been held that a general warrant, or ‘blanket’ warrant, which the law condemns and which the cited constitutional and statutory provisions were intended to prevent, is a warrant to search all places without describing them or to search a number of properly described places which are shown, on the face of the warrant or by the evidence on a motion to suppress, to be occupied by different owners or lessees * * * ”
“In Bowman v. State, supra [73 Okl.Cr. 248, 120 P.2d 373], this court held: ‘Where a search warrant is issued for the purpose of searching a person, such person should be particularly described, and if his name is known it should be stated in the warrant.’ ”
* * * * * *
The warrant in that case directed the search of:

“Ox Yoke at 2105 North Harrison Street in Shawnee, Oklahoma, the party house attached thereto, together with each and every room, compartment, container, or structure therein and each and every person in said building and none other buildings nor persons. (Emphasis added.)
“It is contended that the command to search ‘each and every person’ without naming the persons or describing them constituted a general warrant.”
*21 * * * * *
The record of that case discloses that the whisky seized was found in the kitchen of the premises. The court concluded:
* * * * * *
“The conclusion is inescapable that the warrant is a general or ‘blankef search warrant, which would authorize the indiscriminate search of a large number of people without naming or describing any of them. We think the issuance of a search warrant to search a large number of persons without naming them is subject to the same objections that are made to a general warrant which authorizes the search of premises occupied by two or more families. If the warrant had been directed to search ‘John Doe and any and all persons found in his company/ it would have been considered a general warrant for the reason that the persons in his company were not particularly described in the warrant. The same defect would be apparent in a warrant directing a search ‘of any and all persons’ without naming or describing them.” (Emphasis added.)
******
We do not disagree with Crossland but do not find it applicable to the facts herein.
The State relies on a series of cases from Maryland. These cases are cited and summarized in Saunders v. State, 199 Md. 568, 87 A.2d 618, 621 (1952) which states:
“It may be noted that in the Asner case the warrant commanded the search of a filling station and all persons found on or about the premises as well as the search of an automobile and all persons found therein. In the Lucich case [Lucich v. State, 194 Md. 511, 71 A.2d 432] the warrant commanded the search of all buildings in a tourist court and all persons found on the premises. * * *
* * * [I]t was held in State v. Moore, 125 Iowa 749, 101 N.W. 732, that the erroneous inclusion of a command to search the person as well as the premises of the owner did not vitiate the warrant but could be rejected as surplusage. * *
In the light of our decisions and the trend of the decisions in other jurisdictions, we conclude that the warrant in this case can be sustained as to the search of the premises and all persons participating in the crime, even though we assume that it is invalid as to innocent visitors. We base our decision on the fact that, although the warrant authorized the search of ‘all persons found in the premises or who may enter the premises/ whether or not such persons were participating in the crime, nevertheless it did not violate the constitutional rights of appellant, and he cannot complain that the constitutional rights of other persons may have been violated.”

The search warrants in the Maryland cases go farther than the instant warrant, in that they generally commanded a search of all persons found in the described premises, or building, etc.
Here, the command is to search the person or persons found in the premises who are connected with or who are suspected of being connected with the operation or maintenance of a lottery.
Chief Judge Marbury in his dissent in Saunders, supra, noted:

“* * * There can be no objection to a warrant which, directed mainly at a building, requires the search of all persons found therein who are engaged in the suspected criminal activities. We have held that a warrant to arrest all persons on the premises ‘participating in the bookmaking activity’ is not general in its scope. Smith v. State, 191 Md. 329, 340, 62 A.2d 287, 5 A.L.R.2d 386. (Emphasis added.)
*22 * * * * * *
We believe that this rationale should be followed in Florida. Lottery operations are clandestine and secretive affairs and the places where the tickets are sold, or winning numbers drawn, are often moved in order to escape detection and arrest.
In 15 Fla.Jur. Gambling § 13, it is stated:
“The promotion, conduct, or advertising of a lottery, as well as the possession, sale, or transmission in any way of implements or devices used in lotteries, or of lottery tickets or a share therein, or the possession of any evidence of any share in a lottery or in any lottery scheme or device whether or not expired, and the possession of literature relating to lotteries, is prohibited. * * *”
******
The legislature has determined that even aiding and assisting certain lottery activities is illegal. Fla.Stat. § 849.09(1) (d), (i), F.S.A.
It appears to be reasonable and proper, therefore, to permit an officer armed with a proper search warrant for premises which are being used for gambling, to wit, lottery, to search those persons found therein, who shall be connected with, or who may reasonably be suspected of being connected with the operation or maintenance of the gaming or gambling, i. e., the lottery.
The argument is advanced that the words “connected with, or suspected of being connected with” the operation or maintenance of said gaming or gambling are too broad; too indefinite, and that their interpretation is left to the discretion of the police officer and they are, therefore, a nullity. This is a plausible argument; but one which we' feel must be rejected. If accepted, the officer might not be authorized to search anyone on the premises on which a lottery was being conducted except those specifically named and designated in the warrant; regardless of their actual connection with the maintenance or operation of the lottery. Cf. Dow v. State, 207 Md. 80, 113 A.2d 423, 49 A.L.R.2d 1205 (1955).
In United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the following language, which we deem appropriate, was used:

“ * * * If the teachings of the Court’s cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlaw-yers in the midst and haste of a criminal investigation. Technical requirements of elaborate sp.ecificity once exacted under common law pleadings have no place in this area. A grudging or negative attitude by reviewing courts toward warrants would tend to discourage police officers from submitting their evidence to a judicia^ officer before acting.” [Id. at 380 U.S. 108, 85 S.Ct. 746]
jjc % % Jfi ‡
Even assuming arguendo that this search warrant was invalid as to the search of the person, or persons, found in the premises, we do not believe that this would make a search of the premises invalid. We are of the opinion that the command for the search of the person or persons therein who shall be connected with, or suspected of being connected with the operation or maintenance of the lottery could be treated as surplusage from the command to search the premises. See Hysler v. United States, 86 F.2d 918 (5th Cir. 1937); Ray v. United States, 10 F.2d 359 (6th Cir. 1926); Dow v. State, supra; Giordano v. State, 203 Md. 174, 100 A.2d 31 (1953); Martini v. State, 200 Md. 609, 92 A.2d 456 (1952); Wilson v. State, 200 Md. 187, 88 A.2d 564; Carpenter v. State, *23 200 Md. 31, 88 A.2d 180 (1925); and State v. Moore, 125 Iowa 749, 101 N.W. 732 (1904).
We, therefore, reverse the order quashing the search warrant and suppressing the evidence herein and remand for further action consistent herewith.
It is so ordered.