## MORRIS ANGLIN, JR. *v.* STATE OF MARYLAND

[No. 18, Initial Term, 1967.]

*Decided March 14, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH and THOMPSON, JJ., and DYER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Solomon Liss* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Thomas B. Finan, former Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Martin B. Levinson, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On January 11, 1965, appellant, Morris Anglin, Jr., was convicted of unlawfully breaking, in the daytime, the dwelling house of Milton Volk with the intent to steal, and of feloniously

committing burglary, in the nighttime, of the dwelling of Kolliope Pappas, by Judge Meyer M. Cardin, sitting without a jury, in the Criminal Court of Baltimore. He was sentenced to ten years on each conviction, the sentences to run concurrently, but consecutively with a ten year sentence previously imposed in Baltimore County for a conviction of housebreaking. He raises two contentions on this appeal, (1) that a motion to suppress the evidence seized under color of a search warrant should have been granted, and (2) that there was not sufficient evidence to sustain the convictions.

Appellant concedes that the application for the warrant showed probable cause and does not challenge the validity of the warrant. The affidavit and warrant specifically set out twenty-seven articles reported stolen in a burglary in Baltimore County, including a woman's watch, earrings, two fur coats, a fur scarf, a fur stole, a fur hat, six women's cloth coats, miscellaneous men's jewelry, men's clothing, a television set, a table model radio and a transistor radio. These goods listed were not taken from the home of Mr. Volk or Mrs. Pappas, and, of course, were not part of the evidence in the trial resulting in the convictions from which appeal is now taken. When the police officers searched the trailer under authority of the warrant, they found and seized a very large number of articles, so many that it was necessary to make a half a dozen trips to transport them to the police headquarters. Included in the articles seized were men's and women's clothing, fur coats, men's and women's jewelry, household appliances, radios, some twenty-five or more men's and women's watches, a dozen wallets, jewelry boxes, phonograph records, suit cases, television sets, silverware, cameras, pictures and electric shavers.

Some of these articles were admitted into evidence in the instant case—a watch, a jewelry box, earrings and miscellaneous jewelry under the Volk indictment, a statute under the Pappas indictment. Appellant contends that since they were not among the items listed in the application attached to the warrant, the articles were the product of an illegal search and seizure, and his motion to suppress should have been granted.

The rules of law in this regard are clearly set out in *Brooks v. State,* 235 Md. 23, 29:

"The general rule is that property other than that for which a search is being made under the authority of a search warrant cannot be seized under the authority of that warrant because it does not come within the description of the warrant. See *People v. Pruess*, 195 N. W. 684 (Mich. 1923); *Marron v. United States*, 275 U. S. 192 (1927). The rule is otherwise, however, when an executing officer, upon entering the premises under a valid search warrant, finds thereon contraband or property, the posession of which is illegal and constitutes an offense against the state or government. See the annotation, *Search and Seizure—Different Offense*, 169 A.L.R. 1419, 1424. Under the latter circumstances, the officer has a right to seize such property even though it was not described in the search warrant."

The Court cites a long line of cases in point and quotes *Harris v. United States*, 331 U. S. 145 (1946) at page 155:

"If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

It also refers to *Bryant v. United States*, 252 F. 2d 746 (5th Cir. 1958), where is was said in effect that "the fruits of crime such as stolen property" may be legally seized notwithstanding that the search warrant fails to describe such articles.

Appellant does not quarrel with these rules as such but urges that if property not listed in the search warrant is seized as fruits of crime, the executing officer must know at the time the property has been stolen or at least there must be some proof of knowledge on the part of the officer that *in fact* the property is the fruit of a crime. We do not agree.

In *Brooks v. State*, supra, the Court said, page 30:

"* * * where the officers had *reasonable cause* to infer that the packaged hogmeat labeled 'Curtin' found on

the premises of a suspected thief named 'Brooks' was stolen property, we think the officers were justified in believing that it was the fruit of a crime and in seizing it as such. The mere fact that the packages of hogmeat were not listed as stolen property in the affidavit supporting the search warrant would not render inadmissible the testimony concerning the recovery thereof on the ground that the hogmeat was a product of an illegal search and seizure." (emphasis supplied).

The Fourth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, prohibits only those searches which are or may properly be classified as "unreasonable." *Carroll v. United States,* 267 U. S. 132. In *United States v. Rabinowitz,* 339 U. S. 56, it was said, page 63:

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case."

The officers conducting the search did not have personal knowledge at the time the warrant was executed that the property seized was *in fact* the fruit of a crime. But the record discloses that they had ample reasonable cause to believe that it was stolen property.

The trailer designated in the warrant was observed over a period of seventeen days. During that period appellant left on a number of occasions during the day and night and would be gone several hours. On his return, he would often take something from the trunk of his car and carry it into the trailer. On one occasion he carried in a stack of phonograph records and a box loaded with merchandise. The day before the warrant was obtained, the officers were admitted into the trailer by appellant's wife. She refused them permission to search unless they had a warrant stating she feared what her husband might do

to her. (She testified she didn't remember making this statement but did not deny she made it.)

When executing the warrant, Sergeant Donovan asked Mrs. Anglin to direct their attention to anything in the trailer that was not hers and "anything she knew to be stolen or had knowledge to be stolen, to simplify matters, to direct our attention to it." Mrs. Anglin's version was that she told them that if there was anything there that didn't belong to her they could take it. In any event, she did assist them and "turned over" to the police many of the articles. The officers were aware of appellant's past character and reputation, including the fact that he was a known house burglar. See *Edwardsen v. State,* 243 Md. 131. They also knew that appellant had represented himself to the owner of the trailer park as "Wesley Point Murphy" and that the trailer was registered in the name of "Carmella Rose Murphy." As it later appeared from the testimony of appellant, this was done to obtain financing for the purchase of the trailer under what he called a "skeletal financial program" from an institution in the middle west. The articles seized were of the same nature and substance as those described in the warrant. With this knowledge and confronted with the great array of merchandise, literally enough to stock a store, we do not feel that justice requires the police officers to close their minds and eyes. We think there was more than reasonable cause for them to believe the property was stolen. Appellant maintains that he could have been a watch salesman or a clothing salesman or that there are other logical explanations to account for the property other than that it was stolen. We think this incredible under the circumstances as did the trial court.

Appellant draws a distinction between the instant case and *Brooks v. State,* supra, because in *Brooks* a name other than the name of the occupant of the searched premises was on the packages and therefore it was apparent they did not belong to Brooks. We do not find such distinction. There could have been any number of explanations advanced to account for the possession of the hogmeat other than that it was stolen. In the instant case it would reasonably appear that all this property did not belong to the appellant as clearly as if another name were on the articles. Appellant also urges that since a police officer

in answer to the question on cross-examination, why the items not mentioned in the warrant were seized stated because "Mrs. Anglin insisted on it," this shows the police did not believe the property was stolen. We do not think that this answer can be considered out of context with all the testimony. On direct examination of the officer, counsel objected to the word "insisted" and "turned over" was substituted. And this was preceded by the officers asking Mrs. Anglin to direct their attention to anything she knew to be stolen or had knowledge to be stolen and she did so, turning over to them articles of women's clothing and fur coats. While doing this, the transcript discloses she said, "Take everything out of here that doesn't . . .". What the conclusion of her statement is we do not know as defense counsel's objection at this point was sustained by the court. But the officer's testimony continues to the effect that she turned over to them "* * * many articles of clothing, jewelry, appliances that she had no knowledge of where they originated * * *." She did not say at that time or later that appellant was a salesman or give any other explanation to account for the property being in the trailer.

We find no error in the denial of the motion to suppress the evidence.

With regard to appellant's second contention, that there was not sufficient evidence to sustain the conviction, appellant acknowledges and concedes the rule as stated in *Debinski v. State,* 194 Md. 355, page 360:

> "The law is clear that recent possession of stolen goods is evidence of guilt of the possessor and casts the burden on the possessor of such stolen goods to give a reasonable explanation of how he came into its possession * * *."

In the Volk burglary, the time lapse was slightly over one month, in the Pappas burglary, over six months. Appellant urges that the time lapse is too great for the rule to apply.

In *Butz v. State,* 221 Md. 68, 77, the Court said:

> "The term 'recent,' when used in connection with recently stolen goods, is a relative term, and its meaning as applied to a given case will vary with the circum-

stances of the case. 1 Wharton, *Criminal Evidence* (12th Ed.), Sec. 135. Cf. Underhill's *op. cit.,* Sec. 723; 32 Am. Jur., *Larceny,* Sec. 142."

The Court of Appeals has declined to set up a period of limitations to determine whether or not possession of stolen goods is or is not recent. *Debinski v. State,* supra; *Butz v. State,* supra. In *Cason v. State,* 230 Md. 356, the subject of the larceny, a radio, was recovered from the apartment of the accused over four months from the date it had been stolen and the Court held the radio was properly admitted in evidence and the evidence was sufficient to support the conviction of larceny. We feel, under the circumstances of this case, the possession was "recent" within the contemplation of the rule.

Appellant also urges that he did not have "exclusive" possession of the goods. In *Butz v. State,* supra, both the accused and a woman occupied the apartment when the stolen goods were recovered and therefore the defendant contended his possession was not "exclusive." The Court pointed out that the inference to be drawn from possession alone is never one of law but of fact and the possessor must give a reasonable explanation as how he came into possession or face the inference that he is the thief. The possession in that case was found to be exclusive. In the instant case Mrs. Anglin's actions and testimony showed that the goods were not hers or under her control. She refused to allow the police to search without a warrant for fear of what appellant would do to her, indicating an assertion of possession and control by appellant, but when a warrant was obtained, selected and turned over to the officers those articles which were not her legitimate belongings. Appellant lived in the trailer, made rather dubious arrangements for purchasing it and made the finance payments. He was seen carrying articles into the trailer. Appellant also contends that many other persons had access to the trailer. During the period of surveillance, a total of five or six persons visited the premises, none doing anything unusual. Of significance, however, is that appellant had no explanation of how the goods got into the trailer and that he said he didn't know what was in the trailer, that he had never seen the goods before. He implies that all the goods were placed in the trailer during the period when he was last seen

94

there on November 16, 1965, and November 18, 1965 when the warrant was executed, although the premises were under surveillance during most of that period. The trial judge found that the goods were brought there by appellant with his knowledge and that possession in him was "exclusive." We agree.

We have determined that the appellant's possession of the property was recent and exclusive so as to create an inference of his guilt, in the absence of a reasonable explanation showing his possession was otherwise acquired than by the particular burglaries. The strength of such an inference is determined by several factors, including whether the articles were readily saleable, or whether they were cumbersome or easily portable and the place of the possession, noting in this latter factor that the space for the trailer in the trailer park was rented under an assumed name.

The trial judge found that appellant committed the burglaries. The findings of fact of the trial judge will not be disturbed unless clearly erroneous. *Md. Rules* 886 a and *772; Tucker v. State,* 244 Md. 488. We hold that there was legally sufficient evidence, or proper inferences therefrom, from which the court could find appellant guilty beyond a reasonable doubt.

*Judgments affirmed.*