### DENNIS FURMAN BURKETT AND THOMAS CALVIN BURKETT v. STATE OF MARYLAND

[No. 382, September Term, 1967.]

212

*Decided October 7, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph K. Pokorny* and *Philip M. Sutley* for appellants.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Clewell Howell, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Dennis Furman Burkett and Thomas Calvin Burkett, the appellants, were convicted of storehouse breaking, Md. Code Art. 27, § 32, breaking and stealing to the value of $5 or more, Md.

Code Art. 27, § 33 and being rogues and vagabonds, Md. Code Art. 27, § 490 in a nonjury trial in the Circuit Court for Baltimore County. Each appellant was sentenced to two years for being a rogue and vagabond and eight years consecutively for storehouse breaking. The sentence for breaking and stealing was suspended generally as to each. On appeal it is contended that a hammer and a chisel were illegally seized, and therefore improperly admitted into evidence, and that the evidence was insufficient to support the convictions.

On January 16, 1967, police officers in Baltimore County were keeping a special watch on churches and synagogues on Liberty Road as a result of a burglary which had occurred at the Epworth Chapel Church located at the corner of St. Lukes Lane and Liberty Road on the preceding night. That burglary is not directly connected with the present appeal. At 3:00 A.M. on the 16th Corporal Anthony Vitek, Jr. observed a 1955 red and white Ford turn into the parking lot of the aforesaid church and make a circle therein. Although the vehicle was being operated in an apparently lawful manner the uniformed officer stopped it and requested the operator to show his operator's license and registration card for the vehicle. The operator produced his operator's license but could not produce a registration card. He stated that the vehicle belonged to one of the occupants of the car, Dennis Furman Burkett, one of the appellants, who together with the second appellant, was riding as a passenger in the vehicle on the front seat with the operator. A radio check of the tag number revealed that the tags were issued for another vehicle titled in the name of one Charles F. Grover. Dennis Burkett attempted to explain that he had borrowed the tags from his father's station wagon and placed them on the car. Whereupon the officer informed them that they could not drive without a registration card; that they could not drive on fictitious tags and that the vehicle would have to be checked out as to ownership. The operator of the vehicle was instructed to drive it to the police station where the occupants locked the car and went into the station with the officers; the operator was issued an appropriate traffic summons. While at the station Dennis Burkett produced the title to the vehicle signed over to him by his brother, Jerry Burkett, whereupon he was

issued a summons for permitting the operator, one Shuman, to operate the vehicle; after which the appellants and the operator were permitted to leave the station but the vehicle was kept until proper registration could be furnished. After the occupants of the car had left the station, Corporal Vitek reported to Detective Robert H. LeCain, Jr. that when he had stopped a car the night before and arrested the occupants for motor vehicle violations, he had observed on the floor of the car, immediately behind the driver's seat, brown gloves, a screwdriver, a lug wrench, a carpenter's hammer and other miscellaneous tools, and that he thought Detective LeCain would be interested in observing the vehicle at the station. After Detective LeCain looked through the window of the car and observed two crowbars, a wrench, a claw hammer, some tire irons, screwdrivers and chisels and three or four pairs of gloves, he obtained a search warrant for the vehicle and removed the tools that were visible through the window as well as other tools that were in the trunk of the car.[1]

A duly qualified agent of the Federal Bureau of Investigation made a comparison of a hammer which was removed from the rear floor of the car and a chisel which was removed from the trunk of the car with tool marks on a safe that had been taken from Dave's Court Lane Service Station in a breaking and entering which had occurred on January 11, 1967. The agent testified that the tools were the identical ones that had been used in opening the safe. On cross-examination of Detective LeCain it was brought out that, in his questioning of Dennis Burkett, Dennis had stated that the tools were his and that he used them in his carpentry work, but that he had been unemployed for eight months. Although neither of the appellants testified, their brother, Jerry Lee Burkett, testified that he broke into the gas station alone and that he carried the safe to the car by himself. He further testified that the tools belonged to him. In his finding of fact the trial judge stated that he did not believe that portion of the testimony of Jerry Burkett when he stated that he had committed the crime without assistance.

---

1. The search warrant also contained other information which we need not detail in the absence of a direct attack on the warrant.

Appellants contend that the search warrant was defective, but only because it was the fruit of the illegal stopping of the vehicle in the first instance. They allege that Md. Code Art. 66½, § 97 permitting a uniformed police officer to inspect a motor vehicle operator's driver's license and Md. Code Art. 66½ § 31 permitting a uniformed police officer to inspect the registration card which must be carried by every motor vehicle operator are not valid unless the operator has committed some traffic or other violation of law to justify the initial stopping of the vehicle. They cite no authority in the argument but allege that all of the Maryland cases approving the statutes have done so on the basis that the officer observed a violation of law prior to the initial stopping.

In *Bradley v. State,* 202 Md. 393, 96 A. 2d 491 in discussing this problem the Court pointed out at page 493:

> "By Chapter 1007, of the Laws of Maryland of 1943, Article 66½, Section 96, [now 97] 1951 Code, the hereinbefore quoted Act was repealed and re-enacted in substantially the same form but there was omitted the provision 'provided that no operator of a motor vehicle shall be stopped by any officer for the sole purpose of exhibiting his operator's license.' "

This would clearly indicate a legislative intent the statute was not limited as here contended. In that case, however, it was true that the officer did observe a traffic violation prior to the stopping of the vehicle and the stopping was approved even though the operator was subsequently acquitted of the traffic charge. Since the officer believed that the vehicle was being operated on the wrong side of the road he had reasonable grounds to stop it.

In *Sharpe v. State,* 231 Md. 401, 190 A. 2d 628 the Court also approved a stopping where there was a traffic violation involved.

In *Shipley v. State,* 243 Md. 262, 220 A. 2d 585 police officers were held justified in approaching a parked vehicle and in making an arrest when they saw a concealed weapon within the vehicle, saying at page 587:

> "It has long been recognized that in an appropriate

environment and under appropriate circumstances if it is reasonably necessary to enable a police officer to determine whether a person's conduct is unlawful, he may accost or stop that person and in the process may seek the citizen's identity and his cooperation and may verify the information given him."

In *Cornish v. State*, 215 Md. 64, 137 A. 2d 170, on information received from the Commissioner of Motor Vehicles that Cornish's operator's license had been revoked, a vehicle which he was operating was stopped and when he opened the glove compartment to display his driver's license police officers observed lottery tickets. When he displayed the license a police remarked that the license had been revoked and Cornish promptly replied "That's right." In holding the arrest legal the Court said at page 173:

"If Cornish had not stopped, and answered the questions asked him, he might have been immune from valid arrest, as was pointed out in the Blager case. [162 Md. 664, 161 A. 1]. He chose to stop and give the answers requested and, in so doing, revealed the commission of a misdemeanor to the police. This being so, he was lawfully arrested and the evidence seized as a result of that arrest was admissible."

We think the reasoning of *Cornish* controls the present case. Although here the police officer did not have specific information as in the *Cornish* case, the evidence shows that the operator did stop and did reveal that he was operating the vehicle without a registration card and with improper tags which at that point justified his arrest and the impounding of the vehicle until its ownership could be determined. Compare *Michaels v. State*, 2 Md. App. 424, 234 A. 2d 772. Since the arrest was lawful and a search warrant had properly been issued, the tools were properly admitted.

### Sufficiency of the Evidence to Support the Convictions for Breaking

The appellants concede that the rule is well established in Maryland that in the absence of a satisfactory explanation the

exclusive possession of recently stolen goods permits the drawing of an inference of fact, sufficient to sustain a conviction, that the possessor was the thief or the burglar; but they argue (1) that this rule should not apply to the possession of the tools of the burglary (2) that here the possession was not recent and (3) that the possession was not exclusive.

We are unable to see any logical distinction between the possession of goods which were proven to be the identical goods that were stolen and the possession of burglary tools that were proven to be the identical tools used in the commission of a burglary. This conclusion is supported by all cases that have come to the Court's attention, *State v. Bales,* 68 N. W. 2d 95 (Iowa); *State v. Bell,* 115 N. W. 2d 468 (Minn.); *Pressler v. Warden,* 178 N. Y. S. 311 (Sup. Ct.); *Wilborne v. Commonwealth,* 28 S. E. 2d 1 (Va.).

In *Gamble v. State,* 2 Md. App. 271, 234 A. 2d 158 this Court reviewed the authorities and held that the possession of stolen goods more than five months after the theft was recent. In *Cason v. State,* 230 Md. 356, 187 A. 2d 103 the Court of Appeals found possession more than four months after the theft to be recent. In *Anglin v. State,* 1 Md. App. 85, 227 A. 2d 364 we found that possession six months after the theft was recent. In these cases, and in others, the rule laid down is that recent is a relative term, and must be applied to the facts of each particular case. What is exclusive possession is also relative. In *Bury v. State,* 2 Md. App. 674, 236 A. 2d 751 we held that the exclusive possession could be the joint possession of several people saying at page 753:

> "The Court of Appeals has held in similar factual situations that the occupants of a car are considered jointly in possession of stolen goods found therein. In *Pointer v. State,* 239 Md. 641, 212 A. 2d 260,[2] the accused was held to be in possession of stolen goods found in an automobile thirty feet from where he was found hiding, and from which automobile police officers had seen three unidentified persons flee. In *Carter v.*

**2.** The correct citation is *Pointer v. State,* 238 Md. 23, 207 A. 2d 611.

*State,* 236 Md. 450, 204 A. 2d 322, passengers in an automobile were convicted of possessing bags of heroin which had been discovered under the right front seat of the automobile. In *Shipley v. State,* 243 Md. 262, 220 A. 2d 585, three occupants of an automobile were held to be in possession of various weapons and tools found in the automobile. And in *Wright v. State,* 222 Md. 242, 159 A. 2d 636, it was held that all three of the defendants were in joint possession of burglary tools found in the trunk of the car occupied by them."

In *Matthews v. State,* 237 Md. 384, 206 A. 2d 714 the Court of Appeals found the possession to be exclusively in one of the two appellants; the evidence showed that a check was discarded by one of the suspects, and there was no evidence to indicate that it had ever been in possession of the other. In varying factual situations this Court has sustained convictions based on exclusive possession of stolen goods, *Anglin v. State,* 1 Md. App. 85, 227 A. 2d 364; *Bury v. State, supra; Grimes v. State,* 4 Md. App. 607, 244 A. 2d 456; *Wilkins v. State,* 4 Md. App. 334, 242 A. 2d 808, and in other cases we have found that the possession was not exclusive, *Hickman v. State,* 1 Md. App. 578, 232 A. 2d 282; *Allen v. State,* 2 Md. App. 298, 234 A. 2d 485; *Boblits v. State,* 4 Md. App. 534, 243 A. 2d 891. The rule to be applied in such cases was stated in *Anglin v. State,* 244 Md. 652, 224 A. 2d 668, 670 as follows:

"The reasonableness and legality of permitting an inference of fact that exclusive recent and unaccounted for possession is a guilty possession is explained by the rule that there may be drawn an inference of one fact from proof of another or others if there is some rational connection between the fact or facts proved and the ultimate fact inferred so that the inference drawn from the proof is not so far-fetched as to be arbitrary."

The Supreme Court has approved a similar rule. In *United States v. Gainey,* 380 U. S. 63, 85 S. Ct. 754, 13 L. Ed. 2d 658 the Court upheld a statutory presumption that one found

at an illicit still was presumed to be engaged in "carrying on" an illegal distillery operation; but in *United States v. Romano,* 382 U. S. 136, 86 S. Ct. 279, 15 L. Ed. 2d 210 the Court held unconstitutional a statutory presumption that one found at an illicit still was in "control" of the still.

Applying these rules to the facts of this case, we find the conviction of Dennis Furman Burkett valid, and the conviction of Thomas Calvin Burkett invalid. The evidence showed that Dennis Furman Burkett was the assignee of the title to the car which contained the appellants and the tools used in the breaking. When questioned by the police he claimed ownership of the tools. On the other hand the only evidence to connect Thomas Calvin Burkett with the tools was that he was a passenger in the car several days after the crime had been committed. We do not think that this fact alone is sufficient under the circumstances of this case to support his conviction.[3] An entirely different case may have been presented if the appellants had been found in the car with the tools a few hours after the crime had been committed. See *Bury v. State, supra.*

### *Sufficiency of the Evidence to Support Convictions for Rogue and Vagabond*

The indictment in the present case charged the appellants with being rogues and vagabonds on January 11, 1967 but the trial judge, relying on a line of cases holding that error in charging the date of a single offense is ordinarily deemed harmless, *Chisley v. State,* 236 Md. 607, 203 A. 2d 266 (1964) ; *Fulton v. State,* 223 Md. 531, 165 A. 2d 774, 775 (1960) ; *Greenwald v. State,* 221 Md. 245, 157 A. 2d 119, 123 (1960) ; *Novak v. State,* 214 Md. 472, 136 A. 2d 256, 259 (1957) ; *Mazer v. State,* 212 Md. 60, 127 A. 2d 630, 634 (1956), specifically found the appellants guilty of being rogues and vagabonds by reason of possession of burglary tools on the night of the arrest, January 16th. We do not think those cases are applicable to the

---

3. We do not consider the testimony of Jerry Burkett. It is noted that the trial judge stated that he did not believe all of this testimony. In reviewing the sufficiency of the evidence we must consider the evidence in the light most favorable to the state. Maryland Rule 1086.

present situation where two separate crimes could have been involved. The indictments showed that the appellants were called upon to face a charge of being rogues and vagabonds on the night of the burglary. They could well have been misled when at the trial they were called upon to defend themselves against being rogues and vagabonds on the night of the apprehension some six days later. In the recent case of *Cromwell v. State,* 4 Md. App. 540, 243 A. 2d 643, Cromwell was charged with setting off a false fire alarm at a particular hour; the evidence disclosed that he had set off three separate alarms that same evening and it was not shown that the last alarm (which occurred at the hour specified in the warrant) was false. We reversed. We think the reasoning of that case controls the present case and that where there are multiple crimes it is essential that the indictment inform the accused prior to trial which crime he is called upon to defend. See *Corbin v. State,* 237 Md. 486, 206 A. 2d 809, 811 (1965); *Pearlman v. State,* 232 Md. 251, 192 A. 2d 767, 771 (1963); and *Charles v. State,* 1 Md. App. 222 at 227, 228 A. 2d 620 (1967).

> *Judgments reversed as to Thomas Calvin Burkett and case remanded for a new trial.*
>
> *Judgments affirmed as to Dennis Furman Burkett on the first (Storehouse Breaking) and third (Breaking and Stealing) counts of the indictment. Judgment reversed and case remanded for a new trial with reference to the conviction under the fourth count (Rogue and Vagabond) of the indictment.*