581 A.2d 1287

**Edward MANUEL, Charles Onwuneme, Celestine Aniunoh, Cajetan Ohakwe and Joshua Brewer**

v.

**STATE of Maryland.**

**No. 1511, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 14, 1990.

Certiorari Denied Feb. 22, 1991.

2

4

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellants.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City on the brief), Baltimore, for appellee.

Argued before MOYLAN, GARRITY and JAMES S. GETTY, (retired), Specially Assigned, JJ.

GARRITY, Judge.

Appellants Edward Manuel, Charles Onwuneme, Celestine Aniunoh, Cajetan Ohakwe, and Joshua Brewer were charged with conspiracies to possess and to distribute heroin and with other crimes involving controlled dangerous substances (CDS). All of the appellants were convicted of conspiracy to distribute heroin. All of the appellants except Onwuneme were convicted of conspiracy to possess heroin with intent to distribute. Appellant Manuel was also convicted of conspiracy to distribute cocaine. In addition, appellant Aniunoh was convicted of conspiracy to distribute cocaine and six counts each of distribution of heroin and possession with intent to distribute heroin. The appellants present the following questions for review:

I.  Did the lower court err by permitting more than one conviction for conspiracy of appellants Aniunoh, Brewer, Manuel and Ohakwe and by failing to merge each appellant's conspiracy conviction into a single conviction?

II.  Did the lower court err by denying appellant Manuel and appellant Onwuneme's motions to dismiss on double jeopardy grounds?

III.  Did the lower court err by denying each appellant's request for a severance of his trial from that of all the other defendants?

IV. Did the lower court err by allowing amendment of the conspiracy indictments and by denying postponements in light of the amendments?

V. Did the lower court err by failing to dismiss the charges against the appellants because Rule 4–271 had been violated?

VI. Did the lower court err by overruling the appellants' objections to Mr. Tabansi as an expert translator?

VII. Did the lower court err by refusing to give appellant Aniunoh's requested jury instructions?

VIII. Was the evidence insufficient?

## I.

The appellants'[1] arguments with respect to merger are threefold. Aniunoh,[2] who was indicted and convicted of six separate instances of distribution of heroin and the lesser-included offense of possession with intent to distribute heroin, assigns error to the trial court's imposition of sentences on the lesser-included offenses. Second, appellants

---

**1.** Unlike the other appellants who received multiple sentences arising from numerous convictions, Onwuneme received one sentence resulting from a single conviction. Accordingly, he does not join the contentions as to merger.

**2.** Aniunoh received the following sentences:
   a. Conspiracy to distribute heroin, 15 years; conspiracy to possess heroin with the intent to distribute, 15 years concurrent;
   b. Conspiracy to distribute cocaine, 15 years consecutive; conspiracy to possess cocaine with the intent to distribute, 15 years concurrent;
   c. Distribution of heroin, 15 years consecutive; possession of heroin with intent to distribute, 15 years concurrent;
   d. Distribution of heroin, 15 years consecutive; possession of heroin with intent to distribute, 15 years concurrent;
   e. Four more convictions for distribution and the underlying possession with intent to distribute heroin, for which he received 15 years concurrent on each conviction; and
   f. Possession of cocaine, 4 years consecutive.
Thus, Aniunoh was sentenced to a total of 64 years.

8

Aniunoh, Brewer, Manuel, and Ohakwe [3] contend that the trial court erred when it failed to merge each appellant's two heroin conspiracy convictions into one heroin conspiracy conviction. Finally, appellants Aniunoh and Manuel,[4] each of whom was convicted of conspiracy to distribute cocaine and conspiracy to possess cocaine with the intent to distribute, contend that these convictions should merge into one conspiracy conviction encompassing both the cocaine and heroin conspiracies.

## A.

The evidence adduced at trial showed that the appellants were part of a continuing conspiracy to distribute heroin from Nigeria and to possess that heroin with the intent to distribute. These objects of the conspiracy are considered the same offense for purposes of merger based on the reasoning in *Hagans v. State,* 316 Md. 429, 559 A.2d 792 (1989). Faced with the issue of whether a defendant could be convicted of an offense which is not charged but which is a lesser-included offense of one which is charged, the *Hagans* Court adopted the "required evidence" test as the basis for determining what is a lesser-included offense. *Hagans, supra,* at 449, 559 A.2d 792. The Court wrote, "[a]ll the elements of the lesser included offense must be included in the greater offense. Therefore, it must be impossible to commit the greater without also having committed the lesser." *Id.* Likewise, in *Hankins v. State,* 80 Md.App. 647, 659, 565 A.2d 686 (1989), we held that where

3. Aniunoh, Manuel and Ohakwe received 15–year sentences for conspiracy to distribute heroin and concurrent 15–year sentences for conspiracy to possess heroin with the intent to distribute. Brewer received two 20–year sentences respectively.

4. Manuel was sentenced to 30 years: 15 years for conspiracy to distribute heroin, 15 years concurrent for conspiracy to possess heroin with the intent to distribute, 15 years consecutive for conspiracy to distribute cocaine, and 15 years concurrent for conspiracy to possess cocaine with the intent to distribute. Aniunoh received identical sentences for these convictions, *see supra* text accompanying footnote 2.

the possession with intent to distribute cocaine and the distribution of cocaine emanate from the same transaction, "distribution includes and subsumes possession with intent to distribute because the evidence required to prove distribution includes control over the substance." *Id.*

Therefore Aniunoh's six convictions for possession of heroin with intent to distribute should be merged with his corresponding convictions for distribution of heroin. Accordingly, the sentences for the lesser-included offenses should be vacated.

### B.

The appellants contend and the State concedes that their multiple heroin conspiracy convictions should be merged into one heroin conspiracy conviction per appellant. We agree.

In *Tracy v. State,* 319 Md. 452, 454, 573 A.2d 38 (1990), the Court of Appeals held that convictions for conspiracy to commit murder and conspiracy to commit armed robbery, based on one continuing conspiratorial relationship, must merge. "It is well settled in Maryland that only one sentence can be imposed for a single common law conspiracy no matter how many criminal acts the conspirators have agreed to commit." *Id.* at 459, 573 A.2d 38. Likewise in *Mason v. State,* 302 Md. 434, 445, 488 A.2d 955 (1985), the Court held that "a defendant who distributes a number of controlled dangerous substances in accordance with a single unlawful agreement commits but one crime: common law conspiracy." *Id.* at 445, 488 A.2d 955. The Court cautioned, however, that before reaching this conclusion the nature of the agreement must be analyzed to determine whether there are single or multiple conspiracies. *Id.* Accordingly, we turn now to the nature of the agreement between the appellants.

The trial transcripts are replete with evidence of a massive Nigerian drug trafficking operation. In January, 1987, Detective Sergeant Warren Rineker commenced an investi-

gation of this drug ring as a result of information provided by a registered confidential informant named James Thomas, who was deceased by the time of trial. Through Thomas the police learned that appellant Aniunoh was a mid-level supplier of heroin. During the course of the investigation the police obtained Aniunoh's telephone number. On August 24, 1987, they placed a pen register[5] on Aniunoh's home telephone which recorded the telephone numbers later associated with Manuel, Ohakwe and Eze.[6] After obtaining a court order for a wire tap, the police conducted the tap between October 6, 1987 and November 27, 1987. Other wire taps were conducted on alleged co-conspirators and co-defendants Eze, Okoroafor and Obi.[7] As a result, the police recorded and transcribed thousands of telephone calls which revealed that Aniunoh was a middle-level dealer who obtained heroin from suppliers, including Eze; that he was at the same level as associates Manuel and Ohakwe; and that he was a level above the street suppliers whom he supplied, such as Brewer and Thomas, the informant.

The police set up a large three ounce heroin buy scheduled to occur on December 18, 1987 at informant Thomas' Baltimore City residence. Appellant Manuel arrived. After Thomas displayed the $18,000 cash, Manuel left to "get my man." He returned with appellant Onwuneme and the heroin. The prospective buyers rejected the heroin. Consequently, Manuel and Onwuneme left. They travelled from Baltimore City to Baltimore County where the police, after arresting the appellants, retrieved the three ounces of her-

---

5. A pen register is a device which records telephone numbers of outgoing and incoming calls.

6. Cop Eze was charged with and convicted of conspiracy to distribute heroin and conspiracy to possess heroin with the intent to distribute it. Eze did not join this appeal.

7. The court granted Okoroafor's and Obi's requests for severance as they were scheduled for trial on similar charges in the Circuit Court for Prince George's County. These trials were held and convictions were upheld as reported in *Ezenwa v. State,* 82 Md.App. 489, 572 A.2d 1101 (1990).

oin from beneath the passenger seat of the vehicle where Onwuneme had been sitting.

Pursuant to a search and seizure warrant obtained as a result of the arrest, the police searched Onwuneme's Towson hotel room. The police learned that Onwuneme arrived from Nigeria on December 15, 1987, and he was scheduled to return in a few days. His telephone bill showed calls to Manuel and Thomas. Papers seized from Manuel revealed, *inter alia,* telephone calls to, or the telephone number of, Okoroafor, Ohakwe, Aniunoh, Thomas, and a person from Nigeria designated "Bossman" Chief Charles, Charles Onwuneme.

This evidence firmly establishes a single conspiracy among appellants to distribute heroin and to possess heroin with the intent to distribute. The wiretaps and the staged heroin transaction clearly establish the connection between and the roles of the appellants in the drug ring.

Since the evidence demonstrates a single conspiracy, the appellants multiple heroin conspiracy convictions must be merged into one conviction per appellant for conspiracy to distribute heroin.

### C.

The final merger issue is raised by appellants Aniunoh and Manuel who contend that their cocaine conspiracy convictions should be merged with their heroin conspiracy convictions. While we do not agree with that position, we believe that like the multiple heroin conspiracy convictions, the multiple cocaine conspiracy convictions should be merged into one cocaine conspiracy conviction.

In light of *Mason, supra,* we must consider whether the nature of the agreement among the members of the drug ring extended to cocaine trafficking.

Of the thousands of telephone calls intercepted by the police and the numerous conversations recorded via Thomas' body wire, there are four distinct components of one cocaine transaction. In the course of a heroin deal which

occurred on October 15, 1987, Aniunoh told Thomas that he could obtain some "girl," the street name for cocaine, if Thomas was interested. Aniunoh revealed possible sources in Virginia and in Atlanta. Aniunoh then contacted a possible supplier, Kingsley, in Mississippi, who disclosed his terms and invited Aniunoh to Mississippi to conclude the deal. Aniunoh also discussed with Manuel the terms of the cocaine supplier with whom the latter was familiar. Aniunoh then contacted Thomas to further negotiate the cocaine trafficking scheme.

While the conspiracy to distribute cocaine emanated from the heroin conspiracy, it was a separate, distinct agreement. The cocaine scheme was the offspring solely of conspirators Aniunoh and Manuel, whereas the heroin ring was the prodigy of Onwuneme, Ohakwe, Brewer, Aniunoh, Manuel and many others. The heroin conspirators did not broach the topic of cocaine distribution; rather their focus centered on heroin. The cocaine conspiracy is further distinguishable due to the use of different suppliers. The cocaine derived from a source in the southeast portion of the United States whereas the heroin primarily originated in Nigeria. Finally, the two conspiracies covered different periods of time. The heroin trafficking spanned from January 1987 through February 1988, approximately a thirteen-month period, while the cocaine conspiracy covered a two-month stretch between October 1987 and December 1987. Under these circumstances the cocaine conspiracy constituted a separate offense which does not warrant merger with the heroin conspiracy conviction.

## II.

Manuel and Onwuneme pleaded guilty in Baltimore County to a charge of possession with intent to distribute heroin. The Baltimore County prosecution was based on the incident on December 18, 1984 when Manuel and Onwuneme were arrested after they crossed into Baltimore County following an aborted attempt to sell three ounces of

heroin to police who were posing as buyers.[8]  Subsequent to
their guilty plea, the appellants were tried in Baltimore City
on conspiracy charges.  Manuel and Onwuneme requested
the trial court to dismiss the case based on double jeopardy
grounds.  On appeal, they assign error to the court's denial
of their motions.  The appellants claim that the principles of
collateral estoppel and *res judicata* support their conten-
tion.

The Fifth Amendment to the United States Constitution
and the Maryland common law provide that no person
should be put in jeopardy twice for the same offense.  *Ashe
v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469
(1970); *Robinson v. State,* 307 Md. 738, 741–743, 517 A.2d
94 (1986).  In *Grady v. Corbin,* —— U.S. ——, 110 S.Ct.
2084, 109 L.Ed.2d 548 (1990), the Supreme Court announced
a two-step approach for resolving double jeopardy questions
like those at issue here.

> To determine whether a subsequent prosecution is
> barred by the Double Jeopardy Clause, a court must first
> apply the traditional *Blockburger* [*v. United States,* 284
> U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932),] test.
> If application of that test reveals that the offenses have
> identical statutory elements or that one is a lesser includ-
> ed offense of the other, then the inquiry must cease, and
> the subsequent prosecution is barred.  *Brown* [*v. Ohio,*
> 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187
> (1977).]

*Grady,* —— U.S. at ——, 110 S.Ct. at 2090.

> [But] a subsequent prosecution must do more than
> merely survive the *Blockburger,* test.  As we suggested
> in [*Illinois v. Vitale,* [447 U.S. 410, 100 S.Ct. 2260, 65
> L.Ed.2d 228 (1980),] the Double Jeopardy Clause bars any
> subsequent prosecution in which the government, to es-
> tablish an essential element of an offense charged in that
> prosecution, will prove conduct that constitutes an of-
> fense for which the defendant has already been prose-

---

8.  *See, supra,* p. 10.

cuted. This is not an 'actual evidence' or a 'same evidence' test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.

*Grady,* —— U.S. at ——, 110 S.Ct. at 2090 (footnotes omitted).

The crime of conspiracy and the substantive offense that is its object are separate and distinct under the *Blockburger* required evidence test. *Apostoledes v. State,* 83 Md.App. 519, 523, 575 A.2d 792 (1990). As the Court of Appeals stated in *Gilpin v. State,* 142 Md. 464, 468, 121 A. 354 (1923) (quoting 16 C.J. 280), " '[n]either an acquittal nor a conviction of a conspiracy to commit a crime is a bar to prosecution for the commission of that crime or for aiding and abetting another to commit it.' "

■ Having met the *Blockburger* prong, we turn now to the second prong of the test. The conduct for which Manuel and Onwuneme were prosecuted in Baltimore City was their participation in a heroin ring engaged in ongoing importation and distribution of heroin. The essence of the crime of conspiracy [9] is the agreement itself, not the overt acts done in furtherance of it or which may be probative of it. *Greenwald v. State,* 221 Md. 245, 250, 157 A.2d 119, *cert. denied,* 363 U.S. 721, 80 S.Ct. 1599, 4 L.Ed.2d 1521 (1960). In addition, a conspiracy is an agreement to accomplish an act "in futuro; the purpose of conspiracy is to do something." *Jones v. State,* 8 Md.App. 370, 379, 259 A.2d 807 (1969). While it is true that evidence that Manuel and Onwuneme were stopped and arrested with the heroin in Baltimore County was presented to the jury, that evidence was only a small piece of the voluminous evidence presented at their Baltimore City trial to prove their participation as actors in the ongoing heroin conspiracy. The trial court, therefore, properly denied the appellants' motions to dismiss.

---

9. The State also prosecuted Manuel for conspiracy to distribute cocaine.

### III.

All of the appellants claim that trial of their cases should have been severed from trial of the other charged conspirators and co-defendants. Each of them argues that the jury should have heard only the evidence accumulated during the State police investigation that involved him specifically. These assertions are meritless.

The matter of severance or joinder is one lying within the discretion of the trial judge. *State v. Edison*, 318 Md. 541, 546, 569 A.2d 657 (1990). "In the exercise of its discretion, the court is guided by the mutuality of evidence principle. If, in separate trials, evidence as to each individual offense would be mutually admissible, the offenses may be joined." *Id.* at 548, 569 A.2d 657, citing *McKnight v. State*, 280 Md. 604, 612, 375 A.2d 551 (1977); *accord Frazier v. State*, 318 Md. 597, 609, 569 A.2d 684 (1990).

Maryland Rule 4–253(a) provides that "the court may order a joint trial for two or more defendants charged in separate charging documents if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The purpose of the rule is to save the time and expense of separate trials, but, if justice requires, the rule permits separate trials. *Stevenson v. State*, 43 Md.App. 120, 130, 403 A.2d 812 (1979), *aff'd*, 287 Md. 504, 413 A.2d 1340 (1980). "[J]oinder [of multiple defendants] for trial is dictated under circumstances where most, if not all, of the evidence admitted at trial would have been admissible in each trial if the several defendants had been tried separately." *Id.* (citation omitted).

Conspiracy involves a common scheme or design that constitutes a single, continuing conspiracy evidenced by a series of acts in furtherance of the criminal scheme. *Greenwald v. State*, 221 Md. at 250–51, 157 A.2d 119. "If it be proved that the defendants sought the same objective and that one performed one function and the other another in the attainment of that objective, the inference that they

were engaged in a conspiracy will be justified." *Id.* at 250, 157 A.2d 119. If the conspiracy contemplates the continued cooperation of the conspirators in a series of offenses, it continues until the final accomplishment of the overall purpose, or abandonment of the purpose. *Id.* at 250–51, 157 A.2d 119.

■ One type of continuing conspiracy typically associated with the distribution of narcotics is a "chain" conspiracy. 2 LaFave & Scott, *Substantive Criminal Law,* § 6.5, at 98 (1986). In such cases, the evidence need not show direct communication between all persons in the chain of importation, supply and retailing of the narcotics. The parties' knowledge of the existence and importance of the other links in the distribution chain may be inferred from the circumstances, and it is sufficient to show the combination and community of interest. *Id.* at 99–100.

■ The combination necessary for conspiracy must often be shown by inference from the circumstances. *Greenwald,* 221 Md. at 250, 157 A.2d 119. It is also well established that the declarations of one conspirator, made during the pendency and in furtherance of the conspiratorial purpose, are admissible against the other co-conspirators. *Grandison v. State,* 305 Md. 685, 506 A.2d 580 (1986); *Greenwald,* 221 Md. at 254–55, 157 A.2d 119; and *Ezenwa,* 82 Md.App. at 512–13, 572 A.2d 1101; *Irvin v. State,* 23 Md.App. 457, 470–73, 328 A.2d 329 (1974); *aff'd,* 276 Md. 168, 344 A.2d 418 (1975). The reason for this rule is that

a conspirator is, in effect, the agent of each of the other co-conspirators during the life of the conspiracy. As such, any statement made or act done by him in furtherance of the general plan and during the life of the conspiracy is admissible against his associates and such declarations may be testified to by third parties as an exception to the hearsay rule.

*Terrell v. State,* 34 Md.App. 418, 425, 367 A.2d 95 (1977). Further, the acts of co-conspirators evidencing the general plan are admissible even if they occur prior to the date

charged in the indictment. *Greenwald,* 221 Md. at 250, 157 A.2d 119.

All of the appellants were charged with a single, continuing conspiracy to possess and distribute heroin, with each other and with other named and unnamed conspirators, between January 27, 1987 and February 17, 1988. The State's theory was that there was a single, continuing heroin conspiracy. The appellants do not challenge that characterization; indeed, in their merger argument they allege that it was a single conspiracy to distribute heroin. At trial, the State presented evidence showing heroin dealings between all the appellants and appellant Aniunoh during that period. In addition, all of the appellants had direct dealings with one or more of the other appellants or charged co-conspirators. The permissible inference was that they were all links in a Nigerian-headed scheme to import and sell heroin in the Baltimore–Washington area, and that each was expressly or inferentially aware of the others' roles in that scheme. Thus, the acts and statements of each during the conspiracy were admissible against the other under the aforestated law pertaining to the acts and declarations of co-conspirators, and the law of participation, even if each of them was not involved in every overt act committed by the others.

Moreover, although we held in our discussion of the merger issue that the cocaine conspiracy between Aniunoh, Manuel and Thomas was a separate one, it occurred during the time span of the heroin conspiracy, and the evidence proving it was so connected to the evidence involved in the broader heroin conspiracy, and the transactions were so closely related, that the cocaine conspiracy counts were also properly joined. *See* Maryland Rule 4–253(a); *Tracy,* 319 Md. at 459, 573 A.2d 38 (defendant not prejudiced by joint trial on all counts where charges so interrelated that evidence as to all mutually admissible); *Stevenson,* 43 Md. App. at 130, 403 A.2d 812 (joinder of multiple defendants dictated where most, if not all, evidence admitted at trial would be admissible at separate trial of each defendant).

Considering these facts and the weeks required to try this case, the interests of avoiding the time and expense of separate trials clearly outweighed the alleged need for severance.

## IV.

On January 4, 1989, the State indicated that it intended to amend the conspiracy indictments so as to expand the period of conspiracy. Following a hearing upon this question during preliminary matters prior to trial the next day, January 5, 1989, the court allowed the State to amend the indictment so that the conspiracy was alleged to have occurred between January 27, 1987 and February 17, 1988, rather than between August 1, 1987, and February of 1988. Upon review of the relevant Maryland case law, the court held that the amendment of the date did not change the character of the offense charged. All of the appellants took exception to the ruling.

On appeal, the appellants summarily contend that expansion of the dates changed the character of the conspiracy charged against the appellants. Their conclusion is unsupported by the applicable law, which was properly applied by the trial judge.

Maryland Rule 4–204 provides, in part, that a court "at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offense charged, the consent of the parties is required." Matters relating to the character of the offense are those facts which must be proved to make the act complained of a crime. *Gyant v. State*, 21 Md.App. 674, 681, 321 A.2d 815, *cert. denied*, 272 Md. 742 (1974), citing *Corbin v. State*, 237 Md. 486, 206 A.2d 809 (1965). If the same crime is charged after the amendment, the offense's character has not been changed. *Gyant*, 21 Md.App. at 685, 321 A.2d 815. For amendment purposes, the date the offense is alleged to have occurred is a matter of "form" and not "substance"; thus, it may be amended in

the court's discretion without changing the character of the offense. *See Tucker v. State*, 5 Md.App. 32, 34–35, 245 A.2d 109 (1967). *See also State v. Mulkey*, 316 Md. 475, 560 A.2d 24 (1989) (time of an offense stated in an indictment need not be precise). "It is well established that the State is not confined in its proof to the date alleged in the indictment." *Id.*, citing *West v. State*, 3 Md.App. 123, 127, 238 A.2d 292 (1968).

An exception to the rule quoted in *Tucker* is recognized when the date in the indictment misleads the defendant because of multiple charges. In *Burkett v. State*, 5 Md. App. 211, 245 A.2d 911 (1968), *but see, Goode v. State*, 41 Md.App. 623, 628, 398 A.2d 801 (1978) (reversing *Burkett* on other grounds), the indictment charged the appellants with rogue and vagabond on January 11, 1967, but the trial judge, considering the date discrepancy to be a matter of form and not substance, found the appellants guilty of rogue and vagabond on the night of the arrest, January 16, 1967. We reversed, reasoning that the appellants could have been misled when at trial they were required to defend themselves for the same charges but on a different date. We stated "that where there are multiple crimes it is essential that the indictment inform the accused prior to trial which crime he is called upon to defend." *Id.*, 5 Md.App. at 221, 245 A.2d 911. The case at hand is distinguishable from *Burkett, supra*, because the amendment did not result in multiple crimes being charged. Rather the amendment altered the period of the ongoing conspiracy to import and distribute heroin. Therefore, the appellants do not fall within the exception.

The appellants' case is also distinguishable from *Thanos v. State*, 282 Md. 709, 387 A.2d 286 (1978), which stands for the proposition that an amendment changing the criminal act charged changes the character of the offense charged. In *Thanos*, the State amended the charging document from shoplifting by removing a price tag to shoplifting by altering the price tag. The court's reversal was based on the substantive statute which created one generic offense called

shoplifting but which delineated separate means of accomplishing the crime, one of which was by price tag removal, another by alteration. *Id.* at 714, 387 A.2d 286. Therefore, the substitution of the word "alter" for the word "remove" constituted a change in the basic description of the offense. *Id.* at 716, 387 A.2d 286.

The appellants urge us to hold that an amendment of the conspiracy indictments to expand the period of the conspiracy changes the character of the offense charged. We decline to do so.

The essence of a criminal conspiracy is an agreement between two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832 (1988). Thus, in a prosecution for conspiracy, it is essential only that the indictment state that there was a conspiracy and what the object of the conspiracy was. *Winters v. State,* 301 Md. 214, 234, 482 A.2d 886 (1984). As we previously stated, a conspiracy may encompass a common scheme or design which is in effect one continuing conspiracy to further an illegal scheme, as evidenced by a series of acts done in furtherance of the conspiracy. *Greenwald v. State,* 221 Md. at 250–51, 157 A.2d 119. When a continuing conspiracy occurs, the State is not limited to the date on the indictment. It may adduce evidence pertaining to the same conspiracy prior to the date indicated on the indictment. *Id.* at 252, 157 A.2d 119.

In the present case, the State charged the appellants with a continuing conspiracy to violate the CDS laws during the span of time indicated in the indictments. That ongoing conspiracy included the months of January, 1987 through August, 1987, during which the State's informant, James Thomas, posing as a purchaser and seller of CDS, established a relationship with Aniunoh and purchased heroin from him on several occasions. It was the evidence relating to that portion of the conspiracy that led the police investigators to the other members of the conspiracy, including

the appellants in this case. Evidence pertinent to that phase of a conspiracy was clearly admissible against the other appellants. *Greenwald*, 221 Md. at 251–53, 157 A.2d 119. Moreover, based on the aforesaid law, the indictments still charged the same offense—conspiracy to violate the CDS laws—both before and after the amendment of the date of the offense. Thus, the amendment did not change the character of the offense charged, and did not prejudice the appellants. It was properly allowed.

██ Once the amendments were permitted, all of the appellants, with the exception of appellant Brewer who requested a postponement of a few days, requested a 30–day postponement to allow additional time to prepare a defense. The requests were denied.

Maryland Rule 4-204 provides that a court shall grant a defendant an extension of time or continuance if an amendment of a charge "reasonably so requires." In this case, however, the Assistant State's Attorney had, on December 8, 1988, advised counsel for the appellants of her intent to expand the dates of the conspiracy to January of 1987. Additionally, as the court pointed out, defense counsel had several days remaining after his ruling on the postponement before evidence would be taken in the case. Under these circumstances, additional time for preparation was not reasonably required.

## V.

██ On December 1, 1988, Judge Gordy addressed several pre-trial matters raised by the numerous defendants. At that time he indicated that the case was not in a trial posture because the court had yet to rule on the appellants' motion to suppress the wiretap evidence and because two defendants were scheduled for trial in another jurisdiction. He referred the matter via the Assistant State's Attorney to the Administrative Judge's designee, Judge Angeletti, for a hearing on whether good cause existed to postpone trial of the appellants.

The appellants [10] contend that their speedy trial rights, as encompassed in Maryland Rule 4–271, were violated because Judge Angeletti did not conduct an independent determination of good cause. Instead, they contend that Judge Gordy made the decision which Judge Angeletti merely rubberstamped.

The appellants do not suggest that good cause for the December 1, 1988 postponement was lacking. Rather, they claim that Judge Angeletti, the administrative judge's designee, did not actually make the decision. As they concede, however, this argument was not raised at trial and is, therefore, unpreserved for appellate review. Maryland Rule 8–131(a); *Morgan v. State,* 299 Md. 480, 488–89, 474 A.2d 517 (1984) (argument that judge who found good cause had no authority to do so, raised for first time on appeal, was unpreserved for appellate review); *Reed v. State,* 78 Md.App. 522, 536, 554 A.2d 420 (1989). Since the issue is not properly before us, we are not in a position to rule on it.

## VI.

The appellants argue that the trial court abused its discretion when it found Godfrey Tabansi qualified to testify as an expert in the field of translating the Ibo language, one of three main Nigerian dialects, into English.

The allowance or exclusion of expert testimony is discretionary, and will not be reversed unless based on " 'error of law or some serious mistake.' " *Stebbing v. State,* 299 Md. 331, 350, 473 A.2d 903 (1984), *cert. denied,* 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984), quoting *Raithel v. State,* 280 Md. 291, 301, 372 A.2d 1069 (1977). Further, the decision whether a witness is sufficiently qualified to testify as an expert lies within the sound discretion of the trial

---

**10.** Ohakwe waived his rights under *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), and conceded that since his trial commenced within 180 days of his attorney's first appearance at circuit court, there was no violation of Rule 4–271. Accordingly, he does not join in this contention.

court. *Crews v. Director*, 245 Md. 174, 178, 225 A.2d 436 (1967); *Lester v. State*, 82 Md.App. 391, 398, 571 A.2d 897 (1980). " 'A witness may be competent to express an expert opinion if he is reasonably familiar with the subject under investigation, regardless of whether special knowledge is based on professional training, observation, and/or actual experience.' " *Armstrong v. State*, 69 Md.App. 23, 29, 515 A.2d 1190 (1986), quoting *Fitzwater v. State*, 57 Md.App. 274, 281, 469 A.2d 909 (1984).

Mr. Tabansi testified that he was a cab driver and had worked for about six years as a part-time translator for the CACI Language Center. He was born in Nigeria and lived there until the age of 21. He stated that English is the official Nigerian language, but that there are three main dialects: Hausa, Ulba and Ibo. Tabansi spoke all three dialects and English, but Ibo was his mother tongue. Further, Tabansi had a number of Ibo friends living in the Washington, D.C., area and also communicated in Ibo with his family in Nigeria. He testified that he spoke Ibo almost every day. Moreover, the Nigerian language spoken in this case by the appellants on the wiretaps was Ibo, and Tabansi had no problem understanding them. Tabansi clarified, during voir dire by defense counsel, that while Nigerians who speak Ibo in different towns have different accents or dialects, any Ibo speaking person from any town can understand Ibo spoken in another town.

Evidence was also adduced that Tabansi had previously testified a number of times as a translator of Ibo at administrative and court hearings in criminal, immigration, and social services cases. Tabansi testified that, while he was paid for his time and services completing the translations in this case, he did not know any of the appellants and had no interest in the outcome of the case. Moreover, he played each tape several times in order to check the accuracy of his translations. He was familiar with the typed version of his translations, said that they were true and accurate representations, to the best of his ability, of the conversations on the wiretaps.

Clearly, the jury could not assess the wiretap evidence without a translation. Tabansi, who had testified several times previously in court and administrative proceedings, had sufficient specialized knowledge to testify as an expert translator of Ibo. Accordingly, the court did not abuse its discretion.

## VII.

Appellant Aniunoh takes issue with the trial court's rulings on three of his requested jury instructions. Aniunoh asked the court to instruct the jury that the deceased police informant Thomas' criminal record, which had been admitted in evidence, could be used to evaluate the truthfulness and believability of the information that Thomas had provided. The court denied this request. Aniunoh also requested an instruction charging that if the jury found that he had participated in an uncharged conspiracy but not in the particular conspiracy charged against him, the jury should acquit him. Again, the court denied Aniunoh's request. Finally, Aniunoh assigns error to the court's refusal to instruct the jury to acquit him if they found his defense theory, that the informant persuaded Aniunoh to pretend to be a drug supplier in order to obtain money from prospective buyers, was supported by the evidence.

The law governing a trial court's duty to give instructions requested by the defense in a criminal case was summarized by this court in *McCallum v. State*, 81 Md.App. 403, 410, 567 A.2d 967 (1990):

> Trial judges are required, upon the request of any party, to instruct the jury as to the applicable law and to give a requested instruction which correctly states the law if it has not been fairly covered in the instructions actually given. Md.Rule 4–325; *Lansdowne v. State*, 287 Md. 232 [412 A.2d 88] (1989), Trial judges are not, however, required to give instructions in the precise language requested by counsel. An instruction is sufficient if it fairly covers all of the points of law contained in the requested instruction. *Smith v. State*, 66 Md.App. 603,

621 [505 A.2d 564], *cert. denied,* 306 Md. 371 [509 A.2d 134] (1986). Maryland Rule § 4–325(c).

In the present case, appellant Aniunoh was charged with conspiracy to distribute heroin, conspiracy to possess heroin with intent to distribute, conspiracy to distribute cocaine, conspiracy to possess cocaine with intent to distribute, several counts of distribution of heroin and possession of heroin with intent to distribute, and possession of cocaine. The court instructed the jury on the elements of the crimes of possession of controlled dangerous substances (CDS), possession with intent to distribute CDS, and distribution of CDS; conspiracy to commit these CDS offenses; the State's burden to prove the crimes beyond a reasonable doubt; and the defendants' presumption of innocence. In addition, the jury was given a lengthy instruction regarding the weight and credibility the jury might afford evidence provided by an informant or a witness cooperating with the State. In that instruction, the jury was told that an informer's evidence should be scrutinized with great care. The court also instructed the jury on factors to be considered in assessing the credibility of witnesses, and that it might consider evidence of a defendant's or witness' prior conviction in determining his or her believability.

The court, having instructed the jury both as to the level of scrutiny to afford informant evidence and the relevance of a witness' prior conviction to credibility, fairly and accurately announced the law that the jury was charged with applying. Therefore, Aniunoh's instruction was not required.

As to the two instructions regarding acquittal, *Sangster v. State,* 70 Md.App. 456, 521 A.2d 811 (1987), *aff'd.,* 312 Md. 560, 541 A.2d 637 (1988), is enlightening. In *Sangster,* the trial court properly refused the defense's request that the jury be instructed that simple assault was not a crime of violence that would support a conviction for use of a handgun in the commission of a crime of violence or felony. While the requested instruction was, in the abstract, a correct statement of the law, it was irrelevant to Sangster's

case, as he was charged only with an aggravated assault, the elements of which the court had already described to the jury. Accordingly, the proffered instruction was properly refused. *Id.* at 476–77, 521 A.2d 811.

In the case *sub judice,* the court had already given full and complete instructions on the crimes of conspiracy to possess, conspiracy to possess with intent to distribute, and conspiracy to distribute CDS, the offenses with which Aniunoh was charged. The court correctly ruled that it would not instruct the jury upon uncharged offenses. It's decision was directly supported by the holding in *Sangster,* 70 Md.App. at 476–477, 521 A.2d 811, that a court need not instruct the jury regarding the effect of uncharged crimes. Moreover, the points sought by the instructions were adequately communicated by the instructions already given. If the jury believed Aniunoh was not involved in the crimes defined by the court, it would not be convinced, beyond a reasonable doubt, of his guilt of those offenses. Thus, these instructions, like the first, were properly denied.

## VIII.

The appellants challenge the sufficiency of the evidence upon which their convictions were based. On review, the test for the sufficiency of the evidence is whether all of the evidence, when considered in the light most favorable to the prosecution, would permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831 (1990).

The appellants contend that four of the witnesses were unreliable: Thomas, the informant; Tabansi, the Ibo translator; Sgt. Rineker, a Maryland State Police supervisor in charge of large-scale drug crime investigations; and Dawn Dickie, the long-time girlfriend of appellant Brewer. The weight and credibility of witness testimony, however, is a matter solely within the province of the jury. *Bohnert v. State,* 312 Md. 266, 277, 539 A.2d 657 (1988); *Barnes v.*

*State*, 31 Md.App. 25, 28–29, 354 A.2d 499 (1976). Accordingly, we decline to invade the province of the jury.

■ Appellant Onwuneme asserts that the evidence against him is insufficient because he was not mentioned in any wiretap on Aniunoh's telephone. The evidence adduced at trial demonstrated that Onwuneme supplied three ounces of heroin for the planned December 18 buy, and that he was recruited by Manuel, a mid-level dealer, to supply that transaction. The evidence and inferences from it were also sufficient to prove that Onwuneme had flown from Nigeria that week to deliver a new supply of heroin to the distribution ring. Telephone numbers discovered in his papers disclosed his connection with other members of the conspiracy. Moreover, the police seized documents from Manuel's residence referring to Onwuneme as "Bossman." This overwhelming evidence was clearly sufficient to support Onwuneme's conviction for conspiracy to distribute heroin.

■ Appellant Ohakwe, a former resident of New Jersey, also claimed that evidence of his connection to the conspiracy was too tenuous to support his convictions. The evidence revealed that the police intercepted a number of telephone conversations showing a direct relationship, pertaining to the sale of heroin, between Ohakwe and Aniunoh, both of whom were mid-level suppliers in the ring. There was additional evidence of a connection between Ohakwe and Manuel. Furthermore, the police intercepted telephone conversations between Ohakwe and Cop Eze, a mutual supplier of Ohakwe and Aniunoh. This evidence was clearly sufficient to support Ohakwe's conviction for conspiracy to distribute heroin.

AS TO APPELLANT ANIUNOH, SENTENCES FOR CONSPIRACY TO POSSESS HEROIN WITH INTENT TO DISTRIBUTE AND CONSPIRACY TO POSSESS COCAINE WITH INTENT TO DISTRIBUTE, AND SENTENCES FOR POSSESSION OF HEROIN WITH INTENT TO DISTRIBUTE ARE VACATED.

AS TO APPELLANT MANUEL, SENTENCES FOR CONSPIRACY TO POSSESS HEROIN WITH INTENT TO DISTRIBUTE AND FOR CONSPIRACY TO POSSESS COCAINE WITH INTENT TO DISTRIBUTE ARE VACATED;

AS TO APPELLANT BREWER, SENTENCE FOR CONSPIRACY TO POSSESS HEROIN WITH INTENT TO DISTRIBUTE IS VACATED; AS TO APPELLANT OHAKWE, SENTENCE FOR CONSPIRACY TO POSSESS HEROIN WITH INTENT TO DISTRIBUTE IS VACATED;

ALL JUDGMENTS AS TO SAID APPELLANTS OTHERWISE AFFIRMED;

JUDGMENT AS TO APPELLANT ONWUNEME AFFIRMED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR CORRECTION OF SENTENCES IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID THREE–FOURTHS BY APPELLANTS AND ONE–FOURTH BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.